UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARTELL JONES,

          Plaintiff,                  Case No. 1:23-cv-410

v.                                          Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). In a prior order, the Court granted Plaintiff leave to proceed *in forma pauperis*, referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program, and entered an order staying the case for any purpose other than mediation. (ECF No. 17.) Thereafter, the case was removed from early mediation pursuant to Defendants Saad and Huyge's request. (ECF Nos. 20, 21.)

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all named Defendants *except* Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim all of Plaintiff's claims against remaining Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith *except* his Fourteenth Amendment equal protection clause claims, and official capacity ADA and RA claims.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison in Marquette, Marquette County, Michigan. The events about which he complains occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington, MDOC Deputy Director Kenneth McKee, and MDOC Mental Health Program Director David Dawdy. (Compl., ECF No. 1, PageID.3.) Plaintiff also sues the following ICF officials and medical personnel: Warden John Davids, Deputy Warden Unknown Bonn, Assistant Deputy Warden Unknown Ferguson, Assistant Deputy Warden of Housing Unknown Dunigan, Mental Health Unit Chief David Maranka, Psychiatrist Hanna Saad, Qualified Mental Health Professional (QMHP) Benjamin Bookie, QMHP Chelsie Jones, Resident Unit Manager Unknown Luther, Prison Counselor Unknown Sanborn, Former Prison Counselor Unknown Simon, Prison Counselor Unknown Smith, Law Librarian Unknown Novak, Librarian Technician Unknown Zupon, Chaplain Unknown Party #1, Health Unit Manager Unknown Williams, Physician Unknown Party #2, Physician Assistant Unknown Huyge, Nurse Unknown Jones, Nurse Unknown Johnson, Nurse Unknown Nixon,

Captain Unknown Kelley, Lieutenant Unknown Jaramillo, Sergeant Unknown Moore, Sergeant Unknown Strickland, Sergeant Unknown Kerr, Sergeant Unknown Coscarelli, Sergeant Unknown Greenfield, Sergeant Unknown Swanson, Sergeant Unknown Hicks, Corrections Officer Unknown Perkins, Corrections Officer Unknown Sherwood, Corrections Officer Unknown Beehler, Corrections Officer Unknown Halstead, Corrections Officer Unknown Jenkins, Corrections Officer Unknown Neph, Corrections Officer Unknown Schafer, Corrections Officer Unknown Odunuga, Corrections Officer Unknown Rees, Corrections Officer Unknown Montoya, Corrections Officer Unknown Enderle, Corrections Officer Unknown Bestman, Corrections Officer Unknown Maxim, Corrections Officer Unknown Franz, Corrections Officer Unknown Willman, Corrections Officer Unknown Harrell, and Corrections Officer Unknown Party #3. (*Id.*, PageID.3–4.) Plaintiff sues Defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. (*Id.*, PageID.4.)

In Plaintiff's complaint, he states that he "has been diagnosed by MDOC mental health officials with a serious mental illness." (*Id.*, PageID.4–5.) Specifically, Plaintiff states that his "diagnoses include: Schizoph[r]enia, Psychotic Disorder, Antisocial Disorder, [and] Depression." (*Id.*, PageID.5.) Plaintiff alleges that on July 14, 2022, he was "involuntarily classified to [the] mental health Start Now Program" at ICF without due process. (*Id.*, PageID.2, 4, 9–10.) Plaintiff claims that he was not afforded the opportunity to have a hearing to challenge his "involuntary classification" to the Start Now Program nor was he permitted to present evidence. (*Id.*, PageID.10.)

As to the Start Now Program, Plaintiff alleges that Defendants Washington, McKee, and Dawdy "authorize a sham and unconstitutional mental health Start Now Program," (*id.*, PageID.5), and that Defendants Davids, Bonn, Ferguson, Dunigan, Maranka, Sanborn, Simon, and, Smith

3

"had authority in and/or duty of the operation and management of ICF's Start Now Program." (*Id.*, PageID.6.) Plaintiff claims that "[o]n its face, the Start Now Program provides mental health programs, services, and activities to mentally disabled prisoners," but that "in actuality, said program creates a disparate treatment and disparate impact on mentally disabled prisoners, and fail[s] to accommodate their disability-related needs." (*Id.*, PageID.7.) Plaintiff further claims that the "[c]onditions in the Start Now Program units are degrading, excessively restrictive, and managed under segregation standards," and that "Plaintiff and other mentally disabled prisoners" are subject to "extreme isolation" and "reduced environmental stimulus," and provided with inadequate exercise. (*Id.*, PageID.7, 13–14, 15.) Plaintiff alleges that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith use the Start Now Program as a "pretext to indefinitely confine Plaintiff and other mentally disabled prisoners in solitary confinement at maximum security prisons." (*Id.*, PageID.9.)

Plaintiff next claims that the mental health care he received in the Start Now Program was inadequate. (*See id.*, PageID.10–11.) Plaintiff states that he received medication, but he did not receive psychotherapy or mental health counseling. (*Id.*, PageID.11.) Plaintiff alleges that the "majority of his interactions with QMHPs have been from confined in his cell and not confidential." (*Id.*) Plaintiff also claims that although he "is qualified to participate in work programs," Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, and Luther denied Plaintiff "the benefits of qualified MDOC work programs for reason of his disability and confinement in the Start Now Program unit." (*Id.*) Further, Plaintiff claims that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith "through the Start Now Program . . . denied Plaintiff and other mentally disabled

4

prisoners the benefits of religious services for reason of their disabilities and confinement in the Start Now Program unit." (*Id.*, PageID.12.)

Plaintiff also claims that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Luther, Sanborn, Simon, and Smith "through the Start Now Program are denying and/or denied Plaintiff and other mentally disabled prisoners equal phone and jpay use as general population prisoners for reason of their disabilities and confinement in the Start Now Program units." (*Id.*, PageID.13.) Specifically, Plaintiff alleges that "[g]eneral population prisoners at ICF receive daily phone and jpay use," and that "mentally disabled prisoners confined in the Start Now Program unit" are "scheduled once per week for" "[p]hone and jpay use," but that officers often deny Start Now prisoners access to Jpay and the phone for "weeks and months." (*Id.*, PageID.12–13.)

Additionally, Plaintiff claims that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith "though the Start Now Program are subjecting and/or subjected Plaintiff and other mentally disabled prisoners to degrading conditions of confinement." (*Id.*, PageID.15.) Specifically, Plaintiff claims that "[o]fficers at ICF have a practice of denying mentally disabled prisoners showers and cell cleaning as pretext to minimize their workload," and that Plaintiff has experienced this. (*Id.*, PageID.16.)

Plaintiff's complaint then details specific discrete incidents of alleged wrongdoing by officers at ICF as related to the following: conditions of his confinement, denial of access to Buddhist religious services, denial of access to the courts, denial of mail and grievance forms, retaliatory acts, food deprivation, use of excessive force, denial of medical care, harassment, misuse of observation cells and property, and violation of due process in disciplinary procedures. (*See id.*, PageID.11–12, 15, 17–58.)

5

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment, the ADA, the RA, the Prison Rape Elimination Act (PREA), the Due Process Clause of the Fourteenth Amendment, and the First Amendment. The Court also construes Plaintiff's complaint to raise claims under the Equal Protection Clause of the Fourteenth Amendment. As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*See id.*, PageID.61–62.)

## II.  Misjoinder

### A.  Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

6

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Washington is the first Defendant named in the action.[1] (*See* Compl., ECF No. 1, PageID.1.) Plaintiff's claims against Defendant Washington relate to her involvement with the implementation of the Start Now Program. Specifically, Plaintiff alleges that Defendant Washington "authorize[s] [the] sham and unconstitutional mental health Start Now Program," (*id.*, PageID.5), and uses the Start Now Program as a "pretext to indefinitely confine Plaintiff and other mentally disabled prisoners in solitary confinement at maximum security prisons." (*Id.*, PageID.9.) Plaintiff alleges that Defendants McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith were also involved with the implementation of the Start Now Program at ICF. (*See, e.g., id.*, PageID.5, 9.)

---

[1] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Plaintiff's allegations against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith regarding the implementation of the Start Now Program at ICF are transactionally related. However, Plaintiff's allegations against the remaining thirty-eight Defendants are transactionally *unrelated* to Plaintiff's allegations regarding the implementation of the program. Specifically, Plaintiff's allegations against the remaining thirty-eight Defendants stem from discrete events that occurred during Plaintiff's incarceration at ICF. It appears Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred at some point during his incarceration at ICF; however, such belief does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. Instead, Plaintiff's allegations against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith regarding the implementation of the Start Now Program at ICF are transactionally unrelated to the specific incidents of alleged wrongdoing by individual officers and medical providers at ICF.

Accordingly, the Court concludes that Plaintiff's claims against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith regarding the implementation of the Start Now Program are properly joined because these claims arise out of the same transaction and occurrence. However, Plaintiff has improperly joined the remaining thirty-eight Defendants.

**B.     Remedy**

Because the Court has concluded that Plaintiff has improperly joined thirty-eight Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and

9

proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff states that he was placed in the Start Now Program at ICF in July of 2022. (*See* Compl., ECF No. 1, PageID.2.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the

10

misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop all named Defendants *except* Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith because they are misjoined, and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits.[2] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."). If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing a new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's detention at ICF does mean that all claims arising out these events are properly joined.

11

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Claims Regarding the Implementation of the Start Unit at ICF**

Plaintiff suggests that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith violated the Constitution, the ADA, and the RA by implementing the Start Unit Program at ICF.[3]

---

[3] When setting forth his claims, Plaintiff states that his rights under the PREA were violated (*see* Compl., ECF No. 1, PageID.60); however, Plaintiff does not allege any facts showing that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith violated the PREA. Instead, Plaintiff's PREA claims are brought

12

### 1. Constitutional Claims

Plaintiff alleges that "[o]n its face, the Start Now Program provides mental health programs, services, and activities to mentally disabled prisoners," but that "in actuality, said program creates a disparate treatment and disparate impact on mentally disabled prisoners, and fail[s] to accommodate their disability-related needs." (Compl., ECF No. 1, PageID.7.) Plaintiff claims that the mental health care he received in the Start Now Program at ICF was inadequate, and that the ICF Start Now Program denies religious services, restricts JPay and phone use, limits outside-of-cell exercise, and houses participants in "excessively restrictive" conditions, including "extreme isolation," and "reduced environmental stimulus."[4] (*Id.*, PageID.10–11, 13–14, 15.) Based on these allegations, Plaintiff avers that the Start Now Program at ICF violates numerous constitutional provisions, including the First and Eighth Amendments.

When taken individually, Plaintiff has not set forth plausible constitutional claims on any of the bases set forth above against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith because he has not alleged sufficient facts to show that these Defendants were personally involved in the specific instances of alleged wrongdoing. Instead, Plaintiff seeks to hold these Defendants liable for subordinate employees' alleged wrongdoing. However, the acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 575–

---

against some of the misjoined Defendants. Accordingly, any intended PREA claims against the properly joined Defendants are subject to dismissal for failure to state a claim.

[4] Plaintiff also alleges that he was denied "the benefits of qualified MDOC work programs for reason of his disability and confinement in the Start Now Program unit." (Compl., ECF No. 1, PageID.11.) However, a prisoner, such as Plaintiff, "has no constitutional right to prison employment or a particular prison job," *McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (citation omitted).

76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Nonetheless, Plaintiff's allegations about the constitutionality of the Start Now Program at ICF essentially rest upon his belief that the program discriminates against those who have been diagnosed as having "a serious mental illness." (Compl., ECF No. 1, PageID.5, 7.) The Court, therefore, construes Plaintiff's claim regarding the constitutionality of the Start Now Program to be premised on a violation of the Fourteenth Amendment's Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46. Additionally, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be

14

similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

As noted above, Plaintiff contends that "mentally disabled prisoners" in the Start Now Program at ICF are denied various services and programs, including religious services, "equal phone and jpay use as general population prisoners," and outside-of-cell exercise due to their disability. (*See, e.g.*, Compl., ECF No. 1, PageID.12–14.) Although Plaintiff has by no means proven his equal protection claim, at this stage of the proceedings, the Court will not dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith.

### 2. ADA and RA Claims

Plaintiff also suggests that Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith's implementation of the Start Now Program at ICF violates the ADA and the RA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to

15

apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith in their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, here, Plaintiff alleges that the mentally ill inmates, including himself, in the Start Unit Program have not been provided access to several services and programs because of their disability and that the program fails "to

16

accommodate his disability-related needs." (*See, e.g.*, Compl., ECF No. 1, PageID.2, 7, 10–15.) At this stage of the proceedings, taking Plaintiff's factual allegations in the light most favorable to him, the Court will not dismiss Plaintiff's ADA and RA claims against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith in their official capacities.

### B. Claims Regarding Involuntary Classification to Start Now Program

Plaintiff contends that his placement in the Start program in July of 2022 violated his right to due process. (*See* Compl., ECF No. 1, PageID.2, 9–10.)

#### 1. Procedural Due Process Claims

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship

17

on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was "involuntarily classified to ICF's Start Now Program without due process." (Compl., ECF No. 1, PageID.10.) Plaintiff contends that the "[c]onditions in the Start Now Program units are degrading, excessively restrictive, and managed under segregation standards." (*Id.*, PageID.7.) Plaintiff does not allege that his placement in the Start program will affect the duration of his sentence, and as explained below, Plaintiff has failed to allege facts to suggest that the Start program is an atypical and significant deprivation.

As an initial matter, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Furthermore, as noted above, Plaintiff describes the Start Now Program units are "managed under segregation standards." (Compl., ECF No. 1, PageID.7.) With respect to a prisoner's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Here, at the time that Plaintiff filed his complaint, he had been in the Start Now Program at ICF for less than a year. Although Plaintiff alleges in a conclusory manner

that the Start Now Program units are "managed under segregation standards," Plaintiff alleges insufficient facts to suggest that his placement there is an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021).

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith regarding his placement in the Start Now Program.

### 2. Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, it is clear that Plaintiff disagreed with his placement in the Start Now Program, however, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claims against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith will be dismissed.

## Conclusion

As set forth above, the Court will drop as misjoined all named Defendants *except* Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. Additionally, having conducted the review required by the PLRA, the Court will dismiss for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), all of Plaintiff's claims against remaining Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith *except* his Fourteenth Amendment equal protection clause claims, and official capacity ADA and RA claims. Plaintiff's Fourteenth Amendment equal protection clause claims, and official capacity ADA and RA claims against Defendants Washington, McKee, Dawdy, Davids, Bonn, Ferguson, Dunigan, Maranka, Luther, Sanborn, Simon, and Smith remain in the case.

An order consistent with this opinion will be entered.

Dated:   January 23, 2024                           /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge